ROSE J. BANTON, and another *vs.* HARRIET S. GRISWOLD.

Penobscot.    Opinion July 26, 1901.

*Execution.    Levy or Sale by State.    Stat. 1821, c. 60, §§ 27, 33.*

1.  The word "person" in a statute does not necessarily include the State itself.

2.  When the same statute in one section gives a "person" power to levy his execution by extent, and in another section gives the State power to levy its execution by sale at public vendue, there is some presumption that the intent was to confine the State to a levy by sale, since it is not a state function to acquire, hold and manage lands as a private owner.

3.  When the provisions in such statute for redemption from a levy by extent are not available against the state as a levying creditor in possession, but are available against a purchaser under levy by sale, it is sufficiently clear that the intent of the legislature was to confine the State to a levy by sale.

See *Millett* v. *Mullen*, ante, p. 400.

Assumpsit by plaintiffs as co-tenants in common and undivided against the defendant co-tenant, Harriet Griswold, devisee of Wm. H. McCrillis, deceased, to recover their share of stumpage money collected by the defendant from the common land.   The premises are wild land, being the North half of T. 2, P. 8, W. E. L. S. in Penobscot county.

*T. D. Bailey*, for plaintiffs.

Action is at common law.   *Richardson* v. *Richardson*, 73 Maine, 405 ; *Hudson* v. *Coe*, 79 Maine, 83.   Levy by State against Redington.   Counsel cited:   Stat. 1821, c. 60, in force at time of levy.   "Person" does not include "State."   *Blair* v. *Worley*, 2 Ill. 177 ; *Matter of Fox Will*, 52 N. Y. 535, affirmed in *U. S.* v. *Fox*, 4 Otto, 315.   "May" and "shall:"   *Isham* v. *Iron Co.*, 19 Vt. 248 ; Endl. Stat. § 399, p. 216.   Levy by metes and bounds defective, because land was held in common and undivided.   Tax of 1845, void because it includes the public lots, the fee of 480 acres being in Massachusetts.   *Dillingham* v. *Smith*, 30 Maine, 370 ; *Hammond* v. *Morrill*, 33 Maine, 300.   No one should be held to thus pay another's tax.

Counsel also argued : That defendant's tax deeds are not admissible in evidence, because they are void on their face. Creating no cloud upon the title and not being color of title, they are not admissible in evidence to substantiate or prove title.

That they are not admissible in evidence because there is no evidence of the statute requirements, leading up to the issuance of a deed, being complied with.

That the act of the legislature, in 1852, c. 272, seeking to remedy or cure the defects in these proceedings is unconstitutional and void, interfering with vested rights and depriving a man of his property without due process of law.

*C. F. Woodard,* for defendant.

Levy against Redington is valid. Stat. 1821, c. 60. "Any person" includes bodies politic and corporate. R. S., 1841, c. 1. § 3, cl. 13.

The general rule is, that where there is a pre-existing right and the statute gives a new remedy, the remedy is cumulative. The right of a judgment creditor to levy on the lands of a judgment debtor existed long prior to the creation of this State, and when in the outset the Legislature gave to the State the right to seize and sell at auction the lands of its judgment debtors, it did not thereby take from the State the right which it had in common with everybody else. The statute was evidently intended to confer an additional privilege upon the State, not to take from it rights which everybody had.

The same statutory provision allowing debtors' real estate to be taken and sold at auction on an execution in favor of the State still exists in § 50, c. 76, R. S.

So, too, since the passage of chapter 80 of the Public laws of 1881, all real estate attachable may be seized and sold on any execution, but lands of the judgment debtors may also be levied upon since 1881 as well as before, and the Act of 1881 simply gave cumulative remedy. Is it possible that anybody except the State may have the choice of either remedy, while the State alone is confined to a single remedy ? In regard to equities of redemption of lands mortgaged, there have long been in the statutes provisions providing either for a levy subject to the mortgage, or a right of

seizing and selling the equity. All these provisions have stood side by side upon the statute book and so stand now. The case of *Millet* v. *Blake*, 81 Maine, 531, 536, expressly says that in case of mortgaged lands, the right to redeem the debtor's lands from the mortgage could be acquired by the creditor either by levy of his execution, or by seizure and sale of the equity of redemption.

If the two rights co-exist in one case, why would they not co-exist in all cases? Counsel further argued: *Hodgdon* v. *Wight*, 32 Maine, 326, is an authority completely covering this case; that since its decision in 1853 it has constituted a rule of property which all persons were bound to know and recognize, and that having stood for a period of nearly fifty years without being overruled or questioned, the doctrine settled by it should not now be disturbed.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, STROUT, FOGLER, PEABODY, JJ.

EMERY, J. This is an action by one co-tenant against another co-tenant in common and undivided of the north half of Township Numbered Two, Range Eight, W. E. L. S. to recover the plaintiff's share of stumpage money collected by the defendant from the common land. It is admitted that the plaintiff shows a prima facie title to sixty-one one hundred and ninety-second parts (61-192) of the land, except as the title may have been lost to predecessors of the plaintiff (1) by a forfeiture of the whole for the non-payment of State taxes, and (2) by the loss of twenty-seven one hundred and ninety seconds (27-192) by a levy of execution against William Redington in 1840.

The published opinion in *Millett* v. *Mullen*, ante p. 400, overrules the first objection to the plaintiff's title, since as to that question the material facts are substantially the same in the two cases. The only remaining question, therefore, is the validity of the levy of execution above referred to.

In June, 1840, the State of Maine recovered in the Supreme Judicial Court, for Kennebec county, a money judgment against William Redington and Alfred Redington. Execution was issued upon this judgment and the State sought to levy it by extent upon

the interest of the judgment debtors in the north half of the township in question, and to cause their interest to be set out to the State by metes and bounds. The plaintiff contends that such mode of levying execution upon real estate was not open to the State, but only to persons or corporations created by the State,— and that the State could only levy by sale upon execution.

The statute governing the matter is that of 1821, ch. 60, "An act respecting the attachment of property on mesne process, and directing the issuing, extending and serving of executions." By § 27, it was enacted, "That when any person shall obtain judgment in any court within this State for any sum of money, and shall think proper to levy his execution upon the debtor's real estate then "—he shall cause it to be done by appraisal and extent. By section 33 of the same chapter it was enacted, "That upon any judgment in any court of law in this State, in the name or for the benefit of this State, for any sum of money, a writ of execution in common form shall issue, and be directed to the proper officer, and the lands of such judgment debtor may be taken on such execution and sold at public vendue to the highest bidder." The plaintiff contends that the State was confined to this latter mode of levying. The defendant contends that the State could use this mode or could use the mode provided for a "person" in section 27, at its option.

Arguments may be made upon both sides of the question whether the word "person" in section 27, fairly includes the State itself. "The decisions upon this question are not easily reconciled, but the better opinion seems to be that the word 'person' does not in its ordinary or legal signification, embrace the state or government." 18 Am. & Eng. Ency. of Law, 404, note 2.

Argument may also be made either way as to the force of the word "may" in § 33. Is it wholly permissive in the sense that the state may use the mode there described, or may use the other mode provided for persons in § 27 at its option? Or is it permissive in the more limited sense that the state may or may not levy at all, but mandatory as to the mode, if it elects to levy? It is familiar learning that the use of the word "may" for "shall" is common, and that the word "may" is sometimes to be construed as mandatory.

The right of a judgment creditor to levy his execution upon the land of his debtor is purely statutory and hence is limited to the words, or necessary import, of the statute.

Upon reading the whole of chapter 60 (Laws of 1821) and considering that it was enacted as a whole at the same time, we are clear that the legislature did not intend that the state, on becoming a judgment creditor, should levy upon the lands of its debtor by extent.

The State was not then, no more than now, a business corporation except incidentally as necessary to further its political purposes. It was not in its organization or machinery adapted to acquire, own, cultivate, manage or make a profit out of lands, except for public use. It needed its revenues and debts due it to be paid in money. Lands set out to it upon appraisal and extent, when not needed for public use, were of no value to the State except to sell. Indeed, it had never been the policy of preceding governments to acquire and hold land as a private owner. The policy had always been to have the lands not needed for public use parcelled out among individuals, as fast as they could be surveyed and sold.

Again, the statute (chap. 60) made careful provision for a redemption from the levy by the debtor as a matter of right. It required (§ 30) an accounting by the execution creditor for the rents, profits and improvements accrued or made since the levy. It then provided for an adjudication by three justices of the peace, as to the amount which should be paid or tendered for redemption. Upon such payment or tender, the execution creditor was required to execute a good and lawful deed of release to the debtor of the land so taken in execution. If such execution creditor refused to execute such a deed, the debtor was given the right to bring his action of ejectment against the creditor and recover the title and possession of the land. This procedure for redemption clearly was not applicable against the State. It will not be contended that by § 30, the State was compelled to render an account,—that it was compelled to submit its claims to three justices of the peace,— that it was compelled to execute a deed of release,—and finally

that it could be sued in an action of ejectment and evicted by a sheriff. Certainly, in the absence of express words most explicitly requiring it, the court cannot hold that the legislature intended to subject the sovereign state to such liabilities. Legislative acts do not bind the State unless the State be expressly named as to be bound. *Cape Elizabeth* v. *Skillin,* 79 Maine, 493.

On the other hand, the legislature in the same act, in § 33, provided a mode for a levy of execution in behalf of the State which did not subject it to the requirements of § 30 for redemption. The State was authorized to levy by seizure and sale at public vendue to the highest bidder. The officer thus levying the execution was required to execute to the purchaser a good deed of any lands so sold by him. The State was thus relieved of all duties and liabilities to the debtor. He could not proceed against the State, but could proceed against the purchaser with the same rights and in the same way as against any individual creditor, for such right was expressly saved to him by the § 33.

Upon consideration of the whole statute it must be evident that a judgment debtor of the State would be seriously handicapped in the exercise of his right of redemption, if not entirely cut off from it, should the State assume to have the land itself set out by metes and bounds or by assignment, and itself take the rents and profits. The provision for a levy by sale when the State was the execution creditor relieved the debtor of that difficulty, and left him for to deal with the purchaser on an equal footing. It follows, we think, that the legislature intended the State to follow that course and not the course which was followed, viz, that of levying by extent. The levy was therefore void as unauthorized, and did not affect the title of William Redington.

No other objections are made to the plaintiff's prima facie title to 61-192; hence the mandate must be,

> *Judgment for the plaintiff for sixty-one one hundred and ninety-seconds (61-192) of the sums collected by the defendant from the land described in the writ.*
>
> *The amount to be determined at nisi prius.*