## A. L. & E. F. Goss Company

*vs.*

## John A. Greenleaf, and another, and Land & Building.

### Androscoggin.    Opinion February 15, 1904.

*Mechanic's Lien*, none on public buildings.  Public Library.  *Statutes*, — interpretation of; when public not bound.  *Action at law* not convertible into equity.

R. S. (1883), c. 84, § 30; c. 91, § 30; Stat. 1893,
c. 217, § 8.  Spec. Laws, 1901, c. 266.

1.  In construing statutes it is to be assumed that the legislature in framing statutes and settling their phraseology does so with reference to established canons of statutory interpretation.

2.  It is an established canon of statutory interpretation that the State, the public, is not to be considered as within the purview of a statute unless expressly named therein, however general and comprehensive the language otherwise.

3.  As a corollary, public buildings, buildings constructed by the State or by a political subdivision of the State for public purposes and not for pecuniary profit, are not to be considered as within the purview of a statute imposing a lien on buildings in certain cases unless they are expressly named as included.

4.  In the statute of this State known as the Mechanic's Lien Law, and imposing liens in certain cases on "a house, building or appurtenances" R. S. (1883), c. 91, § 30, et seq. — public buildings are not named as included, and hence no lien is imposed by that statute on such buildings.

5.  To constitute a building a public building, it is not necessary that it be erected or purchased by legislative command, or be used solely for the performance of governmental functions.  A building voluntarily erected by a town, under legislative permission merely, to be held and used for a free public library, is a public building and exempt from the operation of the lien statute above cited.

6.  The fact that the building was erected by a town under legislative permission entirely from funds donated to the town by other parties for that purpose, does not make the building any less a public building, or subject it to the lien statute.

7.  An action at law brought under the lien statute to enforce a lien on such a building will not be converted, even under statute of 1893, c. 217, § 8, into a suit in equity to reach the donated funds remaining in the treasury of the town,

8. The rules for the interpretation of statutes are the same in equity as at law.

On report.     Lien claim on public library denied.

This was an action on the case to recover the sum of $838.23 with interest, for labor and materials furnished in the plumbing, heating and gas piping of the Carnegie Library in Lewiston, Maine, by the A. L. & E. F. Goss Company, sub-contractors, therefor under Greenleaf & Doring who were the contractors for the erection of said library building.     The funds for its construction were furnished by Andrew Carnegie, and the lot upon which the building was erected was purchased by the City of Lewiston under the stipulation that Mr. Carnegie was to furnish fifty thousand dollars for the construction of the building, provided the City of Lewiston should purchase a lot and appropriate the sum of five thousand dollars annually for the maintenance and increase of the library.

These conditions were accepted and a building commission elected, authorized and empowered by concurrent vote of the city council as follows: "to proceed to build as soon as may be, upon the site selected therefor, the library for which Andrew Carnegie has devoted the sum of fifty thousand dollars, at a cost, however, not to exceed said sum of fifty thousand dollars, and to this end the commission may employ architects, adopt plans, make contracts for labor and materials and do all other things they deem reasonable and necessary to build, furnish, finish and finally complete said building, the expense of the same to be paid from the Carnegie fund."

In accordance with this vote the commission selected an architect, made a contract for the construction of the library building with Greenleaf and Doring; and as a sub-contractor, under Greenleaf and Doring, the plaintiff furnished the labor and materials sued for. After these were furnished by the plaintiff and after the building was finished, the payment of claims, among which was that of the plaintiff, was delayed by the commission until Greenleaf and Doring first assigned and thereafter were adjudged bankrupts upon their own petition.

It was claimed that this fund, specifically appropriated by Mr. Carnegie for the construction of the library building, should go into

the general fund to be distributed among the entire credit list of Greenleaf and Doring, and that the building known as the Carnegie Library shall be constructed partially, at least, by a contribution from the plaintiff.

The defense urged was, that this is a public building and that as a consequence, under the statutes of Maine, no mechanic's lien could attach thereto.

Other facts appear in the opinion.

*W. H. Newell and W. B. Skelton,* for plaintiff.

1.  The wording of the statute is so plain, it would be unjust to hold that there is no lien upon this building, which is not a public building in the same sense as a jail, city building or school house, which are so indispensable to the proper conduct of municipal affairs; or that the enforcement of a lien thereon by seizure on execution would so seriously impair the conduct of municipal business as to make this course contrary to public policy. When the original statute was passed in 1821, it was intended by the legislature to apply to all buildings, whether public or private. And it certainly would be a hardship if the court should now, for the first time, construe this statute so as to apply to private buildings only, when the words of the statute, taken in their ordinary signification are plainly the other way.

2.  If the court find that a lien cannot be maintained against the building itself for the reason that its maintenance is against public policy, then we urge that the court has the authority to subrogate us to the rights of Greenleaf and Doring to so much of the fund now in the possession of the City of Lewiston as has not been already absorbed in the construction of said building, and make this fund the subject of a lien for the payment of the amount due the plaintiff.

A lien either upon the building or the unexpended fund should be maintained; an interpretation of the law otherwise would be a sword rather than a shield to the mechanic who performs labor or furnishes materials upon a public building under conditions similar to those in this case.

Counsel cited: *Durling* v. *Gould,* 83 Maine, 134; *Ouelette* v.

*Pluff*, 93 Maine, 168; *Shaw* v. *Young*, 87 Maine, 271; *Morse* v. *School District No. 7 in Newbury*, 3 Allen, 307; *Lessard* v. *Inhabitants of Revere*, 171 Mass. 294; *Noonan* v. *Hastings*, 101 Ky. 312, 72 Am. St. Rep. 419; *Wilson* v. *School District*, 17 Kan. 104; *McKnight* v. *Parish of Grant*, 30 La. Ann. 361, 31 Am. Rep. 226; *Perry* v. *Board of Missions, etc., of Albany*, 102 N. Y. 99; *Foster & Co.* v. *Fowler & Co.*, 60 Pa. St. 27.

*Geo. C. Wing and Reuel W. Smith*, for defendants.

*Geo. S. McCarty*, City Solicitor, for land and buildings.

Counsel cited: Jones on Liens, § 577; Dillon Mun. Corp. 4th ed. § 577; Boist Mechanics' Liens, § 208; Phillips Mechanics' Liens, 3d. ed. § 179; *Board of Commissioners* v. *O'Conner*, 86 Ind. 531, 44 Am. Rep. 338; *Leonard* v. *Brooklyn*, 71 N. Y. 498; *Fatout* v. *School Commr's*, 102 Ind. 232; *Board, etc.*, v. *Norrington*, 82 Ind. 190; *Lowe* v. *Howard County*, 94 Ind. 553; *Lessard* v. *Revere*, 171 Mass. 294, and cases there cited. *Hovey* v. *Town of East Providence*, 17 R. I. 80, 81, 9 L. R. A. 156.

SITTING: WISWELL, C. J., EMERY, STROUT, SAVAGE, POWERS, PEABODY, JJ.

EMERY, J. The City of Lewiston was authorized by the legislature, in ch. 266 of Special Laws of 1901, to acquire land and erect a building thereon to "be forever held by said city for the purpose of . . . maintaining a free public library in said Lewiston." Under this authority the city acquired a lot of land and contracted with a firm of building contractors for the erection thereon of a suitable building for that purpose. The building was erected, but the contractors became adjudicated bankrupts and were unable to pay the plaintiff for labor and materials furnished in the erection of the building. The plaintiff claims in this action that it has a lien on the building and land for the labor and materials so furnished under the statute known as the mechanic's lien law, R. S. (1883), c. 91, § 30, et seq. That statute imposes a lien for labor and materials furnished "in erecting, altering, moving or repairing a house, building or appurtenances, by virtue of a contract with or by consent of the

owner, . . . (on the building) and on the land on which it stands, . . . to be enforced by attachment." After a judgment sustaining a lien claim, the land and building are to be seized upon execution and sold, or levied upon by extent, as in other cases of judgment and execution.

I. Assuming all the steps necessary to enforce the lien to have been taken, the first question presented is simply one of statute law,— of statutory interpretation, viz: In enacting the lien statute above quoted did the legislature intend it to apply to and include a building erected by a municipality under legislative authority to be forever held for the purpose of maintaining a free public library?

It is to be assumed that the legislature in framing statutes and settling their phraseology does so with reference to established canons of statutory interpretation. One of the oldest and most universal of these canons is that the crown, the state, the people, the public, is not to be considered as within the purview of a statute unless expressly named therein, however general and comprehensive the language. "The King is not bound by any statute if he is not expressly named to be so bound." Broom's Leg. Max. 57. "The most general words that can be devised (for example, any person or persons, bodies, politic or corporate) affect not him (the King) in the least if they may tend to restrain or diminish any of his rights or interests." Lord Coke in the *Magdalen College case*, 11 Coke, 74, quoted in *Dollar Savings Bank* v. *U. S.* 19 Wall. 239. The U. S. Supreme Court in that case, after quoting the above, went on to say: "It may be considered as settled that so much of the royal prerogative as belonged to the King in his capacity of parens patriæ, or universal trustee, enters as much into our political state as it does into the principles of the British Constitution." An illustration may be seen in R. S. (1883), ch. 84, § 30. In that statute it is provided that "executions against a town shall be issued against the goods and chattels of the inhabitants thereof, and against the real estate situated therein, whether owned by such town or not." This language is comprehensive, but we assume no one will contend that an execution creditor of the City of Augusta can levy his execution on the State

House or Court House therein. See also *United States* v. *Herron,* 20 Wall. 251; *Cape Elizabeth* v. *Skillin,* 79 Maine, 593.

It would seem to be a necessary corollary that public buildings, buildings constructed by the State, or by a political subdivision of the State, (as a county, city, or town), for public purposes only and not for pecuniary profit, are not to be considered as included within a statute imposing a lien on "a house or building," unless they are expressly named as included. Such seems to be the almost universal judicial opinion. In Phillips on Mechanic's Liens, pp. 314, 315, it is stated, "upon public buildings there is no lien. Unless the statute expressly and explicitly provides otherwise they are exempt." For decided cases sustaining this proposition, the curious are referred to *Lessard* v. *Revere,* 171 Mass. 294, and cases there cited; to cases cited in *First Nat'l Bank of Idaho* v. *Malheur County,* (Or.) 35 L. R. A. 141, and note; and to cases cited in 20 Am. & Eng. Ency. of Laws (2nd. ed.) pp. 295, 296.

That the library building in this case is a public building, erected and to be held and maintained solely for public purposes and not for pecuniary profit, seems too clear for argument. Its use is not limited to citizens of Lewiston. It cannot be used for any other purpose than a free public library. No revenue is possible from it. It is not the private property of the city; is no part of its assets. The city holds the title as trustee for the public. The real ownership is in the people for whose use it was erected.

It is urged, however, that there is a difference between buildings and institutions which a municipality is obliged by law to provide and maintain, and those which a municipality is permitted, but not obliged, to provide and maintain; and that even if the statute does not include the former class, it may include the latter class. There may be a difference in circumstance, but we can see none in principle. A building erected by legislative permission solely for the use of the public is as much a public building as one erected by legislative command for the same purpose. The test is in the use and ownership, not in the compulsion to provide. The same contention was evidently urged in the parallel case of *Young* v. *Falmouth,* 183 Mass. 80, (66 N. E. Rep. 419) and was expressly overruled. The court

there said: "It is true that cities and towns are not required to maintain public libraries as they are schools and highways for instance. But it is plain, we think, that money appropriated for the erection and maintenance of a free public library is appropriated for a public use. . . . Whether a use is public does not depend on whether it is compulsory, but on its nature and purpose. . . . . Towns and cities derive no gain or profit from the establishment and maintenance of free public libraries any more than they do from that of free public schools. They are established solely for the general and common good, and we cannot doubt that they come within the same principle, as instrumentalities of government, that free public schools do."

It is also argued that as the labor and materials were furnished by the plaintiff in good faith with the consent of the city and have that much enriched the city or the public, compensation should be made therefor, at least out of the building so enriched. The statute of 1893, c. 217, § 8, is invoked. It provides that "in all proceedings in the Supreme Judicial Court, under the preceding sections, when there appears to be any conflict or variance between the principles of law and those of equity, as to the same subject matter, the rules and principles of equity shall prevail." The argument is, that proceedings to enforce a lien for labor and materials furnished are equitable in their nature. The language of the court in *Shaw* v. *Young*, 87 Maine, 271, 275, is cited, viz: "The statute should be construed as making the lien co-extensive with the benefit. Its equity is thus given scope. The rules and principles of equity are now to prevail." The answer is that the question here is not one of procedure, but is the liminal one whether the plaintiff has any lien at all, enforceable by any procedure however equitably construed. In the case cited, *Shaw* v. *Young*, the court also said: "Courts will now construe them (the lien statutes) liberally to further their equity and efficacy when it is clear that the lien has been honestly earned, and the lien claimant is within the statute." Until the lien claimant makes it clear that he is within the statute, there is no occasion for the application of the principles of equity as opposed to those of law. In determining whether a given case or person is within the scope or

meaning of a statute, there is no difference between the rules of equity and those of law. The rules for statutory interpretation as to rights apart from remedy are the same in either procedure. The court is not empowered even in equity to enlarge a statute to include persons or subject matter which the legislature, according to established canons of interpretation, did not intend it to include.

Much was said at the argument as to the injustice of leaving innocent and deserving laborers and material men without remedy against the public or municipal buildings which their labor and material had enriched. All this we think is beside the question here, which is simply this, has our legislature imposed a lien on public or municipal buildings, like this, in favor of laborers and material men? If it be true that there should be a lien on such buildings, it is for the legislature to impose it. If there should be a remedy against the municipality it is for the legislature to give it. The court should not usurp legislative powers even to avoid what may seem to be an injustice.

II. The following further facts appear in the case: Before the building was contracted for and the labor and materials furnished, Andrew Carnegie donated to the City of Lewiston $50,000 for the erection of a free public library. By vote of the city council, as well as by the terms of the gift, this sum was deposited with the city treasurer as a special fund to be known as the "Carnegie Fund," to be used solely for the purpose indicated. The city paid for the site wholly out of funds raised by taxation, but the building was erected entirely out of the "Carnegie Fund" as the building intended by the donor. There still remains in the city treasury enough of that fund to pay the full amount of the labor and materials furnished by the plaintiff in the erection of the building.

Under these circumstances, the plaintiff claims that, even if he has no statutory lien on the building, he has by force of general principles of equity a right to be paid out of the fund donated and set apart for the erection of the building, and that the court can and should enforce that right. We do not think this claim can be determined in this action, which, however much it may be equitable in its

nature, is still an action at law directed solely against the building. It is not directed against the fund.  No claim upon the fund is made in any of the plaintiff's pleadings.  The city, the custodian of the fund, is not named in the writ and is not a party to this action.  Its appearance is only to defend the building.  No judgment nor decree can be rendered against the city.  The utmost the court could do would be to render judgment against the building.  It is not clear that the pleadings could be legally amended, even under the law and equity act of 1893, ch. 217, so as to make the action one against the city and the fund.  Such an amendment would not only entirely transform the action itself, but would change its object, purpose, and defendants.  However that may be, we think there is no hardship, but much advantage, in requiring this claim to be presented in a new and appropriate procedure with proper parties and the necessary jurisdictional allegations.  This is the course ordinarily followed even in suits distinctly in equity.  *Shaw* v. *Monson Maine Slate Co.,* 96 Maine, 41, 45.

Since there can be at present no personal judgment against the defendants by reason of their adjudication as bankrupts, and there can be no judgment against the building by reason of its not being within the statute, the judgment must be,

> *Lien claim denied.    Action against personal defend-*
> *ants continued to await bankruptcy proceedings.*