2009 ME 40

DEPARTMENT OF CORRECTIONS

v.

PUBLIC UTILITIES COMMISSION.

Supreme Judicial Court of Maine.

Argued: Jan. 15, 2009.

Decided: April 21, 2009.

G. Steven Rowe, Attorney General, Elizabeth J. Wyman, Asst. Atty. Gen. (orally), Augusta, for Maine Department of Corrections.

Joanne B. Steneck, General Counsel, Benjamin J. Smith, Staff Atty. (orally), Maine Public Utilities Commission, Augusta, for Maine Public Utilities Commission.

Alan G. Stone, Esq. (orally), Adam R. Lee, Esq., Skelton, Taintor & Abbott, Auburn, for complainants.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

GORMAN, J.

[¶ 1] The Department of Corrections appeals from an order of the Public Utilities Commission finding that the Commission has jurisdiction, pursuant to 35–A M.R.S. §§ 102(13), (19), and 103(2)(A) (2008), to hear and decide a rate complaint against the Department regarding the Department's inmate telephone system. The Department asserts three arguments in support of its contention that the Commission erred in making this finding: the Commission cannot assert jurisdiction over the Department because the statutory definition of "telephone utility" contained in title 35–A does not explicitly recognize that a state agency may be a utility subject to the Commission's oversight; the Commission's oversight of the Department's telephone charges would contravene the De-

partment's sole statutory authority over correctional facilities; and the inmate telephone system is not subject to Commission oversight because calls are initiated solely by inmates, who are not members of the public, and so there is no public use of the system. We agree with the Department that the Commission lacks statutory authority to regulate another state agency and vacate the decision of the Commission.

## I. FACTS AND PROCEDURE

[¶ 2] This matter involves a complaint brought pursuant to 35-A M.R.S. § 1302(1)(2008) asking the Commission to investigate whether the Department's rates for the inmate telephone service are unreasonable and unjustly discriminatory. After the complaint was filed, the Department finished converting its telephone system from one that used outside contractors to one that is owned and operated for the most part by the Department itself. The Department responded to the complaint by requesting dismissal, asserting that the Commission lacked jurisdiction over the Department. After considering the arguments of various interested parties on the issue of jurisdiction, the Commission ultimately concluded that it had jurisdiction over the Department because it found that the Department was operating as a public utility as defined by 35-A M.R.S. § 102(13). The Commission decided the jurisdictional issue only, and has not yet addressed the merits of the rate complaint. The Commission ordered the Department to file a petition requesting authority to provide interexchange service within the State and to file a schedule of rates, tolls, and charges for telecommunications services it performs. This appeal followed.

[¶ 3] The Department's new telephone system performs multiple security screening and accounting functions on calls made by inmates. Inmates may make direct or collect calls to permitted telephone numbers, but are not allowed to receive calls.

Direct calls are paid by debits to the inmate's account, which can be funded either by the inmate or by someone outside the prison system who deposits money into the inmate's account. Collect calls are billed through an outside contractor to persons who have agreed to accept those calls. The complainants are persons who communicate with inmates and pay for direct and collect calls made by inmates.

[¶ 4] Direct calls are charged at $.30 per minute. Of this, $.20 is applied to the cost of maintaining the inmate telephone system, and $.10 is applied to an inmate benefit fund for the purchase of recreational equipment and other items for inmates. The Department thus calculates that it receives a 33% commission on direct calls. It is not clear whether the Department provided estimates of total revenue from direct calls anticipated under the new telephone system.

[¶ 5] The Department charges $.25 per minute for collect calls, plus $1.55 per call to connect. At the time the Department responded to the Commission's data requests, the Department's revenue model for the new telephone system predicted it would collect about $660,000 per year in total collect call revenue. Of this, the Department is to receive about $370,000, and the outside contractor is to receive the remainder. The Department's plan is to apply 60% of its receipts from collect calls toward the cost of maintaining the inmate telephone system and deposit the remaining 40% into the inmate benefit fund. The Department thus calculates that it receives a commission of 22% on the total revenue from collect calls.

[¶ 6] The Department pays the State Office of Information Technology, which in turn has a contract with Northern New England Telephone Operations LLC, d/b/a FairPoint Communications, $.03 per minute for handling both direct and collect

calls on the Public Switched Telephone Network.

## II. DISCUSSION

 [¶ 7] The central issue in this appeal is whether the Department, as a state agency, is subject to the jurisdiction of the Commission on a rate complaint brought against the Department. This inquiry asks us to consider the relationship between the Commission's broad authority over telephone utilities in Maine and the Department's broad authority over inmates and inmate services. This is primarily a question of statutory interpretation.

 [¶ 8] When, as here, we are reviewing "an agency's interpretation of a statute that is both administered by the agency and within the agency's expertise, we apply a two-part inquiry." *Competitive Energy Servs. LLC v. Pub. Utils. Comm'n*, 2003 ME 12, ¶ 15, 818 A.2d 1039, 1046. Our first inquiry is to determine de novo whether the statute is ambiguous. *Id.* An ambiguous statute has language that "is reasonably susceptible of different interpretations." *Id.* (quotation marks omitted). Second, "we either review the Commission's construction of the ambiguous statute for reasonableness or plainly construe the unambiguous statute." *Id.* We accord "great deference" to the Commission's interpretation if the statute is considered ambiguous, but will apply a different interpretation if "the statute plainly compels a contrary result." *Id.* (quotation marks omitted).

[¶ 9] The Legislature has delegated to the Commission "the jurisdiction, control and regulation" of "[a]ll public utilities." 35–A M.R.S. § 103(2)(A). Title 35–A defines "public utility" to encompass myriad utilities, including telephone utilities. *See id.* § 102(13). "Telephone utility," which is also defined in the statute, includes "every person, its lessees, trustees, receivers

or trustees appointed by any court, that provides telephone service for compensation inside this State." *Id.* § 102(19). Title 35–A defines "person" to mean a "corporation, partnership, limited partnership, limited liability company, limited liability partnership, association, trust, estate, any other legal entity or natural person." *Id.* § 102(11). Furthermore, the statute also defines "telephone service" as "the offering of a service that transmits communications by telephone, whether the communications are accomplished with or without the use of transmission wires." *Id.* § 102(18–A). Only if the Department qualifies as a "legal entity" that transmits communications by telephone for compensation could the Department be encompassed by the statute. Because the term "legal entity" is ambiguous, we will review the Commission's interpretation for reasonableness.

[¶ 10] The Commission looked to Black's Law Dictionary for the meaning of "legal entity," and concluded that the Department met the definition. In doing so, the Commission rejected the Department's argument that the Commission could not assert jurisdiction over a state agency absent express statutory authority. In light of our case law that supports the Department's position, we find that the Commission's interpretation is unreasonable.

[¶ 11] We have a long and solid history of interpreting statutes in order to avoid restraining the actions of the State unless the Legislature has expressly mandated the restraint. For example, in *Jenness v. Nickerson*, we held that the State was not bound by the Maine Civil Rights Act, which provided for a private cause of action for constitutional violations caused by "any person." 637 A.2d 1152, 1158 (Me. 1994). In coming to this conclusion, we were persuaded that the Legislature did not intend "any person" to include the State because the statutory definition did not refer to the State in any way. *Id.* We

have recognized this jurisprudential principle in other contexts. We applied this rule in the context of deciding that a town was not constrained by an insolvency statute, *Inhabitants of Cape Elizabeth v. Skillin,* 79 Me. 593, 594–95, 12 A. 543, 544 (1887) ("It is a settled rule of statute construction, that the government is not bound by the words of a statute tending to restrain, or diminish any powers, rights or interests, unless it is named therein, as to be also bound."); in deciding that the term "person" in an attachment statute did not include the State, *Banton v. Griswold,* 95 Me. 445, 448, 50 A. 89, 90 (1901) ("The decisions upon this question are not easily reconciled, but the better opinion seems to be that the word 'person' does not in its ordinary or legal signification, embrace the state or government.") (quotation marks omitted); in deciding that mechanics' liens could not apply to municipal property dedicated to public use, *A.L. & E.F. Goss Co. v. Greenleaf,* 98 Me. 436, 440, 57 A. 581, 582 (1904) ("One of the oldest and most universal of [the canons of statutory interpretation] is that the crown, the state, the people, the public, is not to be considered as within the purview of a statute unless expressly named therein, however general and comprehensive the language."); and in deciding that the State was not bound by a statute of limitations when seeking to recover the assistance it had provided to a decedent during her lifetime, *State v. Crommett,* 151 Me. 188, 193, 116 A.2d 614, 616 (1955) ("It is the general rule in Maine that the State is not bound by a statute unless expressly named therein.").

[¶ 12] Although this case law involves questions of sovereign immunity, the essence of these opinions is that the Legislature does not intend to curtail the powers of the State and its various agencies unless it expressly so provides in the statute. Here, the Legislature has chosen the terms "person" and "legal entity" to define the bodies over which the Commission has

jurisdiction. In light of our opinions listed above, and with particular emphasis on *Jenness* and *Banton,* which both directly addressed whether the State is included in the definition of "person," we find that relying upon Black's Law Dictionary instead of our settled canons of statutory interpretation is unreasonable. If the Legislature had intended the State to be subject to the Commission's regulation, it would have included it in the definition of "telephone utility" or "person."

[¶ 13] The reasonableness of applying our strict rule of statutory interpretation here and finding that the Department is not subject to the Commission's oversight is strengthened when considering the legislative mandate of the Department. The Legislature has stated:

> Recognizing the need to firmly control all of the State's correctional and detention facilities, provide for the safety of staff and clients, undertake appropriate programming for the classification, education, rehabilitation and maintenance of clients and assure an effective system for the supervision of parolees and probationers, it is the intent of the Legislature to create a Department of Corrections to improve the administration of correctional facilities, programs and services for clients.

34–A M.R.S. § 1201 (2008). In order to allow the Department to fulfill its purpose, the Legislature established it as a cabinet-level position "responsible for the direction and general administrative supervision, guidance and planning of adult and juvenile correctional facilities and programs within the State." 34–A M.R.S. § 1202 (2008). Among the powers delegated to the Department's commissioner is the right to "perform any legal act relating to the care, custody, treatment, relief and improvement of clients," including the overseeing of the client benefit welfare accounts. 34–A

M.R.S. § 1403(1), (10) (2008). The Legislature granted the Department broad power and authority to establish policies and procedures to manage the prisons and the persons incarcerated within them. Nothing in the language of title 34-A supports a determination that some portion of that broad power and authority over inmate services, i.e., the portion that provides incarcerated individuals access to telephones, should be subject to oversight by a separate entity.[1]

[¶ 14] If the Commission's order were affirmed, the Department's ability to manage and operate the prison system, including its system of prisoner access to telephones, would be subordinated to the Commission's regulation of the fees associated with that system. Maintaining control of the telecommunications system, however, is within the authority of and essential to the security needs of the Department at the correctional facilities throughout Maine. Ceding any of this control to an outside entity would interfere with the Department's ability to create and maintain the safe and secure environment it is mandated to provide to incarcerated individuals. This problem is squarely in contrast to the Commission's own legislative mandate, which, in part, is to "ensure that there is a regulatory system for public utilities in the State that is *consistent with the public interest.*" *See* 35-A M.R.S. § 101 (2008) (emphasis added).

[¶ 15] Last, the determination that the Department is operating as a public utility also carries the problematic consequence that the Department would be assessed on its "intrastate gross operating revenues" to support the operating budget of the Commission. *See* 35-A M.R.S. § 116 (2008). It is unlikely that the Legislature intended a State agency to use its own scarce resources to support the work of the Commission.

[¶ 16] Our long tradition of statutory interpretation and the negative consequences inherent in the Commission's assertion of jurisdiction over the Department cause us to conclude that the Commission's interpretation of the statute is unreasonable and that its decision must be vacated.

The entry is:

Order of the Commission vacated. Remanded for further proceedings consistent with this opinion.

---

1. Title 34-A M.R.S. § 3031 lists the rights of all persons residing in correctional or detention facilities. Access to telephones is not among those listed, although "[a] reasonable opportunity to visit with relatives and friends, in accordance with department policies and institutional procedures" is listed. 34-A M.R.S. § 3031(8) (2008).