2012 ME 74

**COVANTA MAINE, LLC**

v.

**PUBLIC UTILITIES COMMISSION.**

Supreme Judicial Court of Maine.

Argued: Sept. 15, 2011.

Decided: June 5, 2012.

Patrick J. Scully, Esq. (orally), Bernstein, Shur, Sawyer & Nelson, Portland, for appellant Covanta Maine, LLC.

Leslie E. Raber, Esq., Jordan D. McColman, Esq. (orally), Mitchell M. Tannenbaum, Esq., and Joanne B. Steneck, Esq., Maine Public Utilities Commission, for appellee Public Utilities Commission.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

Majority: SAUFLEY, C.J., and SILVER, MEAD, GORMAN, and JABAR, JJ.

Dissent: ALEXANDER and LEVY, JJ.

JABAR, J.

[¶ 1]  Covanta Maine, LLC (Covanta), a subsidiary of Covanta Energy, appeals from orders of the Public Utilities Commission (Commission) denying Covanta's requests for certification of two of its facilities as Class I new renewable resources pursuant to 35–A M.R.S. § 3210 (2010)[1]

---

1.  Title 35–A M.R.S. § 3210 has since been amended.  P.L.2011, ch. 314, § 1 (effective June 13, 2011); P.L.2011, ch. 283, § 1 (effective Sept. 28, 2011); P.L.2011, ch. 413, § 1 (effective Sept. 28, 2011) (codified at 35–A M.R.S. § 3210 (2011)).  Only P.L.2011, ch.

and 9 C.M.R. 65 407 311–1 to –2 § 3 (2008). Covanta argues that the Commission erred by basing its conclusion that the facilities were not refurbished on the ratio of Covanta's expenditures in the facilities to the value of those facilities, and it therefore asserts that the Commission improperly denied certification of its two facilities. For the reasons set forth in this opinion, we agree that the Commission improperly denied certification.

## I. BACKGROUND

[¶ 2] In 2007 the Legislature enacted the Act to Stimulate Demand for Renewable Energy, P.L.2007, ch. 403, codified at 35–A M.R.S. § 3210, requiring competitive electricity providers to obtain a percentage of their electricity offered at retail to Maine's consumers from "new" renewable capacity resources. 35–A M.R.S. § 3210(3–A). The statutory portfolio standards require each competitive electricity provider to increase the amount of new renewable capacity resources in its portfolio by one percent every year. *Id.* § 3210(3–A)(A). Specifically, the Act requires that in 2008, new renewable capacity resources make up at least 1% of the electricity provider's portfolio and that by 2017, new renewable capacity resources make up at least 10% of its portfolio. *Id.* § 3210(3–A)(A)(1), (10). Generally, new renewable capacity resources are facilities that began service, were added to an existing facility, resumed operation, or were refurbished after September 1, 2005. 35–A M.R.S. § 3210(2)(B–4). The statute states, in relevant part:

> **B–4.** "New" as applied to any renewable capacity resource means a renewable capacity resource that:

(1) Has an in-service date after September 1, 2005;

(2) Was added to an existing facility after September 1, 2005;

(3) For at least 2 years was not operated or was not recognized by the New England independent system operator as a capacity resource and, after September 1, 2005, resumed operation or was recognized by the New England independent system operator as a capacity resource; or

(4) Was refurbished after September 1, 2005 and is operating beyond its previous useful life or is employing an alternative technology that significantly increases the efficiency of the generation process.

35–A M.R.S. § 3210(2)(B–4).

[¶ 3] The Commission modified its rules to conform with the statute, including adding a provision that requires generators to pre-certify facilities as new renewable resources. 9 C.M.R. 56 407 311–2 § 3(B)(4) (2008). This provision allows the Commission to resolve whether a facility satisfies one of the vintage requirements of section 3210(2)(B–4) on a case-by-case basis. *See Order Adopting Rule and Statement of Actual and Policy Basis,* No. 2007–391, Order at 6 (Me.P.U.C. Oct. 22, 2007). Per the requirements set forth in the Commission's rules, on June 10, 2010, Covanta submitted an application for certification of its West Enfield biomass plant as a Maine Class I new renewable resource. *See* 9 C.M.R. 65 407 311–2 § 3(B)(4) (2008). Two weeks later, on June 24, 2010, Covanta submitted an application seeking the same certification for its biomass plant in Jonesboro. Both applications asserted that the facilities' resource type was "biomass generator" and their

---

413, § 1, which added a definition of "refurbish" to the statute, is relevant to this appeal. The remaining sections discussed in this opinion were not affected by the 2011 amendments.

vintage category was "refurbished" pursuant to section 3210(2)(B–4)(4). *See* 9 C.M.R. 65 407 311–2 § 3(B)(1)(g), (3)(d) (2008).

[¶ 4] Specific to the issue of refurbishment, Covanta explained that each facility was operating beyond its twenty-year useful life due to investments made after September 1, 2005. The Jonesboro and West Enfield plants were first-of-a-kind circulating fluidized bed combustion biomass-fired plants that, according to Covanta, were redesigned and improved to "maximize combustion efficiency and extend the boiler's useful life beyond 20 years." Since September 1, 2005, Covanta, together with the facilities' previous owners,[2] has expended $3,969,515 on its West Enfield facility and $6,097,522 on its Jonesboro facility for "design changes, material upgrades[,] and capital expenditures." After receiving a protective order from the Commission, Covanta submitted a list of these expenditures, identifying the kind of refurbishment project, the previous useful life of each item, the age of the item at the time of the expenditure, the item's estimated new useful life, and the total cost of each expenditure.

[¶ 5] In October 2010 the Commission requested information on the accounting and tax treatment of the listed expenditures, specifically inquiring whether the items were capitalized or expensed. Although the record does not include tax returns for Covanta, Ridgewood, or Indeck, the record does contain a document submitted to the Commission by Covanta indicating the manner in which the expenditures were treated on Covanta's tax returns and Indeck's financial records. This document indicated that for the years 2009 and 2010, the years that Covanta owned the facilities, about 51.1% of the expenditures at the West Enfield facility and 78.5% of the expenditures at the Jonesboro facility were capitalized on Covanta's tax returns. The document also summarized the information contained in the accounting records submitted to the Securities and Exchange Commission by Indeck relating to expenditures for the years 2006 and 2007, the years that Indeck owned the facilities. These records indicate that the value of Indeck's non-current assets increased by $2,139,000 in 2006 and by $602,000 in 2007.

[¶ 6] In November 2010, after reviewing Covanta's applications and the confidential list of major refurbishment projects, the Commission issued orders denying certification to both the West Enfield and Jonesboro facilities on the basis that these facilities did not satisfy the vintage requirement. The Commission determined that, although the facilities were built in 1986 and are operating beyond their previous useful lives, neither facility had been refurbished within the meaning of section 3210(2)(B–4)(4).

[¶ 7] The Commission stated, in making its determination that the facilities were not refurbished, that "it is appropriate to consider whether investments in the facility were routine maintenance items or refurbishment investments." The Commission made this determination in two ways. First, the Commission examined Covanta's tax treatment of its expenditures and determined that a number of the projects listed by Covanta were expensed rather than capitalized, and therefore concluded that the expensed items were more representative of maintenance-type activi-

---

**2.** Covanta purchased both facilities from Ridgewood Maine, LLC, and Indeck Energy Services, Inc., in December 2008.

ties rather than refurbishment projects. The only evidence before the Commission relevant to this determination was the documentation from Covanta indicating that, for 2009 and 2010, 51.1% of the expenditures for the West Enfield facility and 78.5% of the expenditures for the Jonesboro facility were capitalized.

[¶ 8] The Commission also compared the total expensed and capitalized expenditures to the facilities' 2008 value. Using this ratio analysis, the Commission concluded that the total expensed and capitalized expenditures for the West Enfield facility were below twenty percent of the facility's 2008 value and that this "relatively low level of expenditures" would not allow the facility to be classified as refurbished pursuant to the statute. Similarly, the Commission concluded that the total expensed and capitalized expenditures for the Jonesboro facility were below twenty-five percent of the facility's 2008 value, and therefore the facility could not be classified as refurbished. The Commission concluded that neither the West Enfield nor the Jonesboro facility, when comparing Covanta's total expenditures to the value of each facility, had sufficient capitalized investments to be considered refurbished; therefore, the Commission denied Covanta's applications.

[¶ 9] Covanta filed a request for reconsideration of the Commission's orders on November 29, 2010. The Commission took no action on the request. Consequently, the request was denied pursuant to Chapter 110 of the Commission's rules, which provides that a petition for reconsideration not granted within twenty days from the date of filing is denied. 9 C.M.R. 65 407 110–33 § 1004 (1999). Covanta appealed the Commission's decision pursuant to 35–A M.R.S. § 1320 (2011) and M.R.App. P. 2.

## II. DISCUSSION

[¶ 10] As the party seeking to vacate the Commission's decision, Covanta bears the burden of persuasion on this appeal. *Anderson v. Me. Pub. Emps. Ret. Sys.*, 2009 ME 134, ¶ 3, 985 A.2d 501. "We review decisions made by an administrative agency for errors of law, abuse of discretion, or findings of fact not supported by the record." *S.D. Warren Co. v. Bd. of Envtl. Prot.*, 2005 ME 27, ¶ 4, 868 A.2d 210, *aff'd*, 547 U.S. 370, 126 S.Ct. 1843, 164 L.Ed.2d 625 (2006).

[¶ 11] The Commission argues that the term "refurbished" is ambiguous and that therefore we should defer to its expertise and to its definition of the term. However, during the proceedings at the agency level there were no discussions, and there was no apparent confusion, as to the meaning of the term. In its decision, the Commission used the term "refurbished" in a manner that belies its claim that the term is ambiguous: "[I]t is appropriate to consider whether investments in the facility were routine maintenance items or refurbishment investments, and whether the facility is 'operating beyond its useful life.' " We agree that this is the proper standard for evaluating the expenditures and we note that it is consistent with the clarification of the term "refurbished" as set out in a legislative amendment to the Act that was enacted after the Commission made the decisions under appeal here.

[¶ 12] The amendment to Title 35–A M.R.S. § 3210(2)(B–4), enacted by P.L.2011, ch. 413, § 1, took effect on September 28, 2011, after this appeal was argued. The Legislature thereby adopted a definition of "to refurbish" as meaning "to make an investment in equipment or facilities, other than for routine maintenance and repair, to renovate, reequip or restore the renewable capacity resource."

Although this amendment was not in existence at the time when the Commission considered Covanta's applications, we are free to consider such legislation in ascertaining the meaning of a term when the amendment is meant to clarify prior legislation, not alter it. *See Lee v. Massie*, 447 A.2d 65, 69 (Me.1982) ("As a general principle of statutory construction, enactments made by a subsequent Legislature may be examined to illuminate the meaning of prior legislative terminology that is ambiguous."); *Mundy v. Simmons*, 424 A.2d 135, 137 (Me.1980) ("[W]hen there is ambiguity in prior legislative terminology, enactments by a subsequent legislature may throw light on the legislative intent underlying previously enacted legislation and may be taken into consideration in dissipating the uncertainty of a foundational statute.").

[¶ 13]  The meaning of the term "refurbished" as the Commission applied it is consistent with the definition contained in this amendment.  However, the Commission ignored its own criterion and denied the applications on the basis of Covanta's "relatively low level of expenditures."  The Commission committed an error of law when it imposed upon Covanta the requirement that in order to refurbish its facilities, it must spend an amount that reaches a certain unspecified percentage of the value of each facility.

[¶ 14]  The Commission compared Covanta's expenditures to another company's expenditures and decided that Covanta's level of expenditures was too low:

> However, even the total of both expensed and capitalized expenditures was below 25% of the facility's 2008 value and the amount of just capitalized investments, even by Covanta's estimate, is substantially below that value.  In contrast, the level of capitalized investments made by Sappi in its Westbrook biomass facility that was previously certified under the refurbishment vintage criteria was approximately 45% of the facility's value.  As such, we cannot find that *Covanta's relatively low level of expenditures* would allow classifying the entire facility as refurbished, and thus qualifying it as a "new" renewable capacity resource.

(Emphasis added.)

[¶ 15]  The Commission did not deny the petition because it concluded that the expenditures were more in the nature of maintenance or repair items than of refurbishment investments; rather, the Commission arbitrarily established a requirement that the expenditures meet some minimum level that equals an unspecified percentage of the total value of the facility.

[¶ 16]  The statute does not require any minimum investment threshold, and imposing this requirement on Covanta was an error of law.  Any quantitative requirement by the statute occurs only in the second prong of the pertinent section 3210(2)(B–4)(4) analysis (i.e., whether the equipment or facility is "operating beyond its previous useful life").[3]  If the facility has been refurbished and is "operating beyond its previous useful life," then the refurbishment investments are creating "new" energy and accomplishing the goals of the legislation.  If the legislature wanted to place a quantitative requirement on the expenditures—as a percentage of the total value of the facility—it could have done so.[4] Because the Legislature did not

---

3.  There is no dispute between the parties that the second prong of the test—whether each facility is "operating beyond its previous useful life"—has been met.

4.  For example, Rhode Island requires a "Repowered Generation Unit" to "demonstrate that 80% of its resulting tax basis of the entire Generation Unit's plant and equipment (but

include this type of requirement, it was an error of law for the Commission to graft this added requirement onto the Maine statute. Additionally, the Commission's interpretation is in conflict with the policy objective of the Act. The Maine Legislature intended to encourage the preservation of older existing renewable generation facilities by creating an incentive for owners to make the investments necessary to preserve and extend the useful lives of these older facilities. *See* 35-A M.R.S. § 3210(1).

[¶ 17] We vacate the Commission's decision and remand the matter back to the Commission. On remand, the Commission must evaluate the expenditures by determining whether the expenditures were for the purpose of repair or maintenance, or were refurbishment investments. The Commission must make this determination by examining the nature and character of the expenditures without any quantitative requirement related to the amount spent or the ratio of the expenditures to the total value of the facility.

[¶ 18] Although it is not clear in reading the Commission's decision how much weight it put on the manner in which expenditures were handled for tax purposes, it is something that the Commission may consider. However, how a company's expenditure was taxed is not dispositive in deciding whether an expenditure is a repair or maintenance item or a refurbishment investment. Traditionally, pursuant to the federal tax code, expenditures on repairs or maintenance items are expensed or deducted in full in the year they are incurred, whereas capital expenditures are deducted over a period of years as depreciable assets. However, there are many provisions of the tax code that allow what would otherwise be capital expenditures to

be fully deducted in the year that the expenses are incurred. For example, in its "[a]ccelerated cost recovery system," the tax code provides for immediate deductibility for certain capital expenditures made between December 31, 2007, and January 1, 2013. 26 U.S.C.S. § 168(k) (LexisNexis 2012). Likewise, in its provisions allowing for an "[e]lection to expense certain depreciable business assets," the tax code permits the immediate deduction of capital expenditures related to certain tangible property used as part of manufacturing, extraction, or production of electrical energy. 26 U.S.C.S. §§ 179, 1245(a)(3) (LexisNexis 2012 & Supp. Apr. 2012). For these reasons, whether an expenditure is deducted in full in the year it is incurred is not determinative of whether the expenditure is a repair or maintenance item or a refurbishment investment.

[¶ 19] On remand, the Commission must evaluate the expenditures to determine whether they were made for the purpose of repair or maintenance or for investment in equipment or facilities. The Commission must also consider the amendment to section 3210(2)(B-4), and may consider any new evidence offered, including the evidence submitted in Covanta's motion for reconsideration.

The entry is:

Judgment of the Public Utilities Commission is vacated. Remanded for further proceedings regarding the West Enfield and Jonesboro applications consistent with this opinion.

ALEXANDER, J., with whom LEVY, J., joins, dissenting.

[¶ 20] In this appeal, the Court vacates the decision of the Public Utilities Commission (the Commission) by characteriz-

---

not its property and intangible assets) is derived from capital expenditures made after

December 31, 1997." 90-060-015 R.I.Code R. § 3.29(iii) (LexisNexis 2012).

ing descriptive findings of fact as conclusions of law and applying a clarification of law that took effect after this appeal was argued to hold that the Commission erred, as a matter of law, in making its findings of fact based on the record and the law as it existed in 2010. From the Court's abandonment of sound principles of deferential appellate review, I respectfully dissent.

[¶ 21] On this appeal, Covanta bears the burden of persuasion. *See Bizier v. Town of Turner*, 2011 ME 116, ¶ 8, 32 A.3d 1048; *Anderson v. Me. Pub. Emps. Ret. Sys.*, 2009 ME 134, ¶ 3, 985 A.2d 501. Further, as the applicant before the Commission, Covanta bore the burden of proof to demonstrate that each of its facilities qualified for designation as a new renewable capacity resource facility pursuant to 35-A M.R.S. § 3210 (2010). *See* 35-A M.R.S. § 1314 (2010). Pursuant to that law, which governed the Commission action, a new renewable capacity resource facility could include a "refurbished" facility as that term appeared in 35-A M.R.S. § 3210(2)(B-4)(4) prior to the 2011 amendment.

[¶ 22] In support of its application, Covanta stated the total cost of improvements it alleged it had made to refurbish its facilities. Further, Covanta provided a list, divided by year and by facility, of what it characterized as the refurbishments at each facility over the past five years. It appears that these lists were also used as the basis for Covanta's estimates of improvements that had been capitalized rather than expensed for tax purposes in 2009 and 2010, because no other lists of projects appear in the record submitted to this Court.

[¶ 23] A total of 102 refurbishment projects that each had a cost of at least $10,000 appear on these lists. As the Court's opinion notes, the total cost for the Jonesboro claimed refurbishments was $6,097,522.49; the total cost for the West Enfield claimed refurbishments was $3,969,515.10. However, a cursory review of these lists apparently led the Commission to conclude that many of these projects, claimed as refurbishments, were more in the nature of regular maintenance than long-term capital improvements.

[¶ 24] Of these 102 refurbishment projects, Covanta identified twenty-six as having a useful life, when new, of ten years or less. Many were identified as having a useful life, when new, of five years or less. These short-life projects, on regular replacement schedules, included over $2,469,000 for U-beams, which individually were identified as having useful lives, when new, of three, four, or five years. The U-beams were the largest cost items on Covanta's list. Many other items that the Commission reasonably could have concluded were maintenance items appear on this list, but the items and their costs were not addressed in the Commission's findings and are not listed here because the list is subject to a confidentiality order.

[¶ 25] In a separate letter supporting its application, Covanta asserted that, on its tax returns for 2009 and 2010, it had treated the majority of its expenditures for plant improvements as capital improvements rather than expenses. Covanta did not provide copies of its tax returns, or portions thereof, that could have confirmed these claims. Instead, it provided "estimates" of how it had treated those expenditures for tax purposes, with reference to lists of expenditures that were apparently the same or similar to the refurbishments lists discussed above.[5]

---

5. Covanta provided no estimates or evidence of how the prior owners of the facilities had

treated the improvements for tax purposes on

[¶ 26] After the Commission found that Covanta had failed to prove that its facilities qualified as new renewable resource facilities, Covanta filed the motion for reconsideration referenced in the Court's opinion. In support of that motion, Covanta submitted an affidavit by its local plant manager conceding that the affidavit's characterization of items as "refurbishments" differed from previous characterizations that had been submitted before the Commission reached its decision.

[¶ 27] The Commission was not bound to accept these after-the-fact revisions of the list of claimed refurbishments as true and correct, and it did not do so. It denied the motion for reconsideration. The motion is mentioned here only to highlight Covanta's apparent concession that alleged defects in Covanta's evidence in the original proceeding could have led the Commission to conclude, as it did, that many of the listed projects were maintenance, not capital improvement items.

[¶ 28] Presented with conflicting evidence as to whether expenditures were properly viewed as regular maintenance or capital improvements and vague estimates relating to tax treatment of expenditures for refurbishments for only two of the five years at issue, the Commission determined that Covanta had failed to meet its burden of proof to demonstrate that its facilities were sufficiently refurbished to qualify as new renewable capacity resource facilities, pursuant to 35-A M.R.S. § 3210. As Covanta had the burden of proof, and the Commission found that Covanta had failed to meet its burden of proof, Covanta can prevail on appeal only if it can demonstrate that the record before the Commission compelled the conclusion that Covanta's vague and confusing evidence of improvements qualified its facilities as new renewable resource facilities. *See Handrahan v. Malenko*, 2011 ME 15, ¶ 13, 12 A.3d 79; *Kelley v. Me. Pub. Emps. Ret. Sys.*, 2009 ME 27, ¶ 16, 967 A.2d 676. Because Covanta cannot demonstrate that the record before the Commission, when it found that Covanta had failed to meet its burden of proof, compelled a finding in Covanta's favor, the Court's analysis should go no further.

[¶ 29] Instead of focusing on Covanta's failure of proof, much attention in this appeal has focused on apparent confusion in interpretation of the term "refurbished." Neither the then-applicable legislation, nor its legislative history, assist us in determining the meaning of the word "refurbished," or whether the identified repairs and replacements to the generating units in this case are refurbishment and renewal or just regular maintenance. As the manager's affidavit in support of the motion for reconsideration demonstrates, even Covanta itself and the prior owner could not determine what is a repair expense and what is a refurbishment expense.

[¶ 30] Because, when the Commission had this matter under consideration, those questions could not be resolved by looking at the text of the statute alone, the statute and definition of the term "refurbished" is ambiguous. When a statute is ambiguous, we apply rules of construction and look to agency interpretation to determine the meaning of an ambiguous statute. *Cobb v. Bd. of Counseling Prof'ls Licensure*, 2006 ME 48, ¶ 13, 896 A.2d 271.

[¶ 31] In attempting to determine the meaning of an ambiguous statute, an agency's interpretation of the statute is not conclusive. *See Dep't of Corr. v. Pub. Utils. Comm'n*, 2009 ME 40, ¶ 8, 968 A.2d 1047. However, we have stated that we will review an agency's interpretation of a statute

the tax returns prepared by the prior owners

for 2006, 2007, and 2008.

that the agency is charged with administering with "great deference" and will uphold the agency's interpretation unless contrary to the plain meaning of the statute. *Id.; S.D. Warren Co. v. Bd. of Envtl. Prot.*, 2005 ME 27, ¶¶ 4–5, 868 A.2d 210, *aff'd,* 547 U.S. 370, 126 S.Ct. 1843, 164 L.Ed.2d 625 (2006); *see also Kane v. Comm'r of Dep't of Health and Human Servs.*, 2008 ME 185, ¶ 12, 960 A.2d 1196 (Court will defer to the agency interpretation of statute the agency administers "when the meaning of the statute is unclear and is not within our expertise and only if the agency's interpretation is both reasonable and within the agency's expertise").

[¶ 32] In this case, the agency's interpretation and application of the term "refurbished" was both reasonable and within the Commission's expertise, not our expertise. The Commission could have construed many of the repairs and replacements that were identified in this case as akin to a homeowner's replacing an old inefficient wood furnace with a new, more efficient wood furnace. Such an improvement might extend the life of the home, and would be a valuable upgrade to the heating efficiency of the home,[6] but it would not renew the home and make the home like new for its occupants.[7]

[¶ 33] The Commission's interpretation is supported by an important finding by the Commission. Covanta claimed in its filings that they had "estimates" that a majority of their repair expenses for each facility were "capitalized" rather than treated as expenses on Covanta's tax returns for two of the five years at issue. If correct, this information would have supported Covanta's claim that the improvements were capital improvements indicating refurbishment, rather than expenses indicating repairs. However, after examination of the record, the Commission determined that Covanta's "estimates" were not credible and that "a number of the projects included in the list of expenditures for 2009 and 2010 were expensed, rather than capitalized." This credibility determination helped to lead the Commission to decide that Covanta's improvements were more in the nature of repairs than refurbishments.

[¶ 34] The Court holds that, as a matter of law, the Commission erred because, when making its findings, it considered the relative value of Covanta's claimed refurbishment expenditures compared to the overall value of the facilities. However, fairly reading the Commission's decision, it is evident that the discussion of relative percentages of claimed refurbishment costs to overall value was offered to support the Commission's finding that Covanta had failed to meet its burden of proof. This discussion, as quoted in the Court's opinion, emphasized that even if one counted the many maintenance items included in Covanta's cost estimates, the total of the claimed items was only a small percentage of the overall value of the facility. This descriptive observation could be removed from the Commission's decision without changing the overall result. Certainly the Court is not saying, as a matter of law, that replacing a $25 valve that allows a cooling system to operate properly and effectively extends the useful life of a $50 million facility would render the whole fa-

**6.** In its decision, the Commission observed that "Covanta has not asserted that its expenditures have increased the efficiency of the generation process."

**7.** In fact, a wood furnace or boiler may in some circumstances be viewed as a noncapital item that is neither a fixture nor a permanent part of the real estate. *See Thayer Corp. v. Me. Sch. Admin. Dist. 61*, 2012 ME 37, ¶ 8, 38 A.3d 1263.

cility a new facility for purposes of the law. The Commission's descriptive observation was offered in support of its findings. Even if inaccurate, it was not an error of law and did not affect the overall result of the Commission's decision.

[¶ 35] Certainly the repairs and replacements that occurred here, even though their costs were treated as expenses, could be viewed differently, as the Court's opinion indicates. Those facility improvements, even the many with a new useful life of five years or less, might, with some stretch of imagination, be viewed as more of a renewal and making the entire biomass plant like new, but that interpretation is for the Commission, not this Court, to decide. The Commission adopted and applied an interpretation of the ambiguous term "refurbished" that was not unreasonable or contrary to the plain meaning of the then applicable statute. Because the Commission's interpretation of "refurbished" is not unreasonable, and because, in any event, the evidence that Covanta presented could be disbelieved and does not compel a finding that Covanta's facilities have become new renewable resource facilities, I would affirm the decision of the Commission.