2011 ME 15

Lori HANDRAHAN

v.

Igor MALENKO.

Supreme Judicial Court of Maine.

Submitted on Briefs: July 7, 2010.
Decided: Jan. 25, 2011.

Kenneth P. Altshuler, Esq., Childs, Rundlett, Fifield, Shumway & Altshuler, Portland, ME, for Lori Handrahan.

Michael J. Waxman, Esq., Portland, ME, for Igor Malenko.

Panel: SAUFLEY, C.J., and LEVY, SILVER, GORMAN, and JABAR, JJ.

JABAR, J.

[¶ 1] Following the testimony of two expert witnesses in support of Lori Handrahan's complaint for protection from abuse filed against her ex-husband, Igor Malenko,[1] on behalf of the parties' minor child, the District Court (Portland, *Moskowitz, J.*) entered a judgment in favor of Malenko. Handrahan asks us to conclude that the expert witness testimony compelled a finding that Malenko was abusing the child. Because we conclude that the trial court's evaluation of the evidence was not clearly erroneous, we affirm the judgment.

## I. CASE HISTORY

[¶ 2] In July 2009, two individuals made reports to the Department of Health and Human Services that Igor Malenko was sexually abusing his two-year-and-eight-month-old daughter. The Department began an investigation and referred the child to the Spurwink Child Abuse Program for a sex abuse evaluation.

[¶ 3] As part of the Spurwink evaluation, Dr. Lawrence Ricci performed a physical examination of the child and found no signs of any "genital or rectal trauma, either acute or prior." Ricci then consulted with the Department; counsel for each parent; and Joyce Wientzen, L.C.S.W., who was the co-director of Spurwink, about proceeding with a forensic interview, to which they unanimously agreed. Wientzen conducted the forensic interview by reading background information, speaking to various individuals, including those who had heard the child make statements suggestive of abuse, and meeting with the child twice.

[¶ 4] When meeting with the child, Wientzen noted that the child could not recite the interview rules, demonstrate resistance to suggestion, or participate in Wientzen's attempts to assess the child's understanding of the difference between the truth and a lie. During the second interview, the child disclosed sexual abuse by her father. The child's disclosure to Wientzen was consistent with what she had told others.

[¶ 5] Following their medical and forensic evaluations, Ricci and Wientzen presented the results to a team made up of other Spurwink interviewers, a psychologist, and a nurse practitioner. The team collaborated to place the case into one of four categories: (1) strong evidence of abuse, (2) moderate evidence of abuse, (3) do not know, or (4) no evidence of abuse.

[¶ 6] The team fit this case into the category of moderate evidence of sexual abuse of the child by Malenko and recom-

---

1. In September 2009, we affirmed the parties' divorce judgment, with one modification not relevant here. *See Malenko v. Handrahan,* 2009 ME 96, 979 A.2d 1269.

mended that the child have no unsupervised contact with him. In reaching its conclusion, the team was swayed by the specificity and consistency of the child's statements recounting the abuse. They did consider aspects that weakened the likelihood of abuse, including that the child did not offer many surrounding details; was very young; made the disclosure in the context of a custody dispute; and had been questioned previously about this abuse by Handrahan and others, which could have increased the possibility of suggestion. However, the team felt that the child's statements "could not be explained merely by suggestive questioning, or ... by some alternate form of touching, such as hygienic touching."

[¶ 7] In August 2009, Handrahan filed a complaint for protection from abuse on behalf of her daughter. The District Court (Ellsworth, *Staples, J.*) entered a temporary protection from abuse order and transferred venue to Portland.

[¶ 8] Before the protection from abuse proceedings began, the court (*Moskowitz, J.*) granted in limine motions made by both parties, including Malenko's motion, based on *State v. Black*, 537 A.2d 1154 (Me.1988), to exclude any expert opinion testimony regarding the truthfulness of any disclosure made by the child.

[¶ 9] Neither Handrahan nor two other individuals who claimed to have heard the child's disclosures were present at the hearing. Handrahan relied exclusively on Ricci and Wientzen, who testified about their examination methods and opined that there was "moderate evidence" of sexual abuse by Malenko. At the conclusion of the direct examination of these witnesses, Handrahan sought to admit Ricci's medical and Wientzen's forensic examination reports as business records pursuant to M.R. Evid. 803(6). Malenko objected, arguing that the statements of absent witnesses, which were quoted or referenced in both reports, were double hearsay and should be redacted. The court admitted both reports without redaction.

[¶ 10] At the conclusion of the hearing, the court found that Handrahan had not proved abuse by a preponderance of the evidence. *See* 19–A M.R.S. § 4006(1) (2009). The court distinguished judicial fact-finding from that of "examiners and medical professionals." The court noted that, although the child's statements were the crux of the Spurwink team's opinion that there was moderate evidence of abuse, the court was hesitant to assign great weight to the statements of a child who was unable to distinguish between the truth and a lie. In addition, the court noted that it, unlike the examiners, was required to consider "bias, motive to fabricate, and other circumstantial evidence" in order to determine what had or had not been proved. In sum, the court determined that Handrahan had presented "extremely precarious evidence of an extremely serious allegation."

## II. DISCUSSION

[¶ 11] Handrahan appeals from the court's judgment, arguing that the court's determination that she had failed to meet her burden of proof was based on its failure to apply the protection from abuse statutes, 19–A M.R.S. §§ 4001–4014 (2009),[2] liberally, as required by section 4001, and on erroneous fact-finding.

[¶ 12] We agree with Handrahan that the protection from abuse statutes must be liberally construed and applied to promote

---

2. The protection from abuse statutes have since been amended, though not in any way that affects the present case. P.L.2009, ch.

555, §§ 4–7 (effective July 12, 2010) (codified at 19–A M.R.S. §§ 4006(6), 4007(6) (2010)).

their underlying purposes, which include (1) recognizing the serious and detrimental consequences of domestic abuse on children, and (2) providing the victims of domestic abuse with expeditious and effective protection. *Id.* § 4001(1), (2). Although the statutes must be construed liberally, it is still necessary for the moving party to prove its case by a preponderance of the evidence, *see id.* § 4006(1), through testimony and exhibits that are admissible under the rules of evidence, *see* M.R. Evid. 101, 1101. It is not inconsistent with a liberal construction of the statutes for a court to conclude, after carefully evaluating the evidence, that the moving party has not met its burden of proof.

[¶ 13] Additionally, we discern no error in the court's factual findings. For an appellant who had the burden of proof at trial to prevail on a sufficiency of the evidence challenge on appeal, that party must demonstrate that a contrary finding was compelled by the evidence. *Efstathiou v. Efstathiou,* 2009 ME 107, ¶ 10, 982 A.2d 339, 342. We review factual findings for clear error and will affirm a trial court's findings if they are supported by competent evidence in the record, "even if the evidence might support alternative findings of fact." *Preston v. Tracy,* 2008 ME 34, ¶ 10, 942 A.2d 718, 720 (quotation marks omitted).

[¶ 14] In our prior decisions, we have emphasized that determining what weight to give expert testimony is exclusively within the province of the fact-finder. *See, e.g., Rinehart v. Schubel,* 2002 ME 53, ¶ 9, 794 A.2d 73, 76. A court is not required to "believe the testimony of any particular witness, expert or otherwise," *id.* (quotation marks omitted), even when the witness's testimony is uncontradicted, *Dionne v. LeClerc,* 2006 ME 34, ¶ 15, 896 A.2d 923, 929. Furthermore, "[w]here the facts and assumptions underlying expert opinions are amply exposed during their testimony in the course of trial, the fact-finder is entitled to draw his own ultimate conclusions." *State v. Ellingwood,* 409 A.2d 641, 644 (Me.1979).

[¶ 15] Among the evidence admitted and considered by the court was Wientzen's testimony and report repeating the child's allegation of abuse, and the Spurwink team's conclusion, testified to by Ricci, that there was "moderate evidence" of abuse. Initially, we recognize that some of this evidence may not have been properly admitted. However, because Handrahan offered this evidence to support allegations that the court determined she failed to prove, any error in admitting the evidence was harmless. *See* M.R. Civ. P. 61.

[¶ 16] Wientzen's report was offered as a business record pursuant to M.R. Evid. 803(6), but the court admitted the child's statements to Wientzen pursuant to M.R. Evid. 803(4).[3] Rule 803(4) allows hearsay statements "made for purposes of medical diagnosis or treatment and describing ... the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Here, Wientzen conducted a forensic interview of the child in her capacity as co-director of the Spurwink Child Abuse Program, and on this record it is not clear that the child's statements to Wientzen

---

**3.** Wientzen's report contained multiple levels of hearsay and could not be admitted as a business record pursuant to M.R. Evid. 803(6) without redacting the hearsay statements that did not fall within an exception to the hearsay rule. *See* M.R. Evid. 805 (authorizing the admission of hearsay within hearsay if both statements conform to the requirements of an exception to the hearsay rule); *see also In re Soriah B.,* 2010 ME 130, ¶ 19, 8 A.3d 1256, 1261–62 (explaining that M.R. Evid. 703 does not render admissible hearsay forming the basis of an expert's opinion).

were made for purposes of medical diagnosis or treatment.[4] *But cf. Ames v. Ames,* 2003 ME 60, ¶ 16, 822 A.2d 1201, 1206 (explaining that a statement that is otherwise admissible under Rule 803(4) is not disqualified because it is made during an examination that proves helpful to a party's case).

 [¶ 17] There was also a serious question as to the admissibility of the experts' opinion that there was "moderate evidence" of abuse. Under our precedent, unless there is a demonstration of scientific reliability, an expert cannot testify that a child is a victim of sexual abuse. *Black,* 537 A.2d at 1156–57 & n. 1; *accord State v. York,* 564 A.2d 389, 390–91 (Me.1989). Without a showing of scientific reliability under the standard set out in *State v. Williams,* 388 A.2d 500, 504 (Me.1978), Ricci rendered an opinion that the child had been sexually abused by commenting on the evidence presented to the court. He opined that the evidence indicated moderate evidence of sexual abuse of the child by Malenko. This testimony could very easily have been excluded as improperly rendering an opinion as to the occurrence of sexual abuse or as improperly commenting on the credibility of the victim, *see Black,* 537 A.2d at 1156–57 & n. 1.

[¶ 18] Although there were serious questions surrounding the admissibility of this evidence, it was admitted and we must assume that the court considered it. The court did not err in its evaluation of the evidence presented. The court was not required to accept the experts' characterization of the evidence, and its refusal to adopt their opinion does not constitute clear error.

[¶ 19] In its analysis, the court noted that the sole evidence of abuse was the child's statement made to Wientzen during the course of Wientzen's forensic interview. As noted above, the court admitted the child's statement pursuant to M.R. Evid. 803(4) concerning statements made for purposes of medical diagnosis or treatment. The court correctly observed that "the linchpin of that rule is the strong motivation of a patient to be entirely honest with [her] physician for purposes of medical diagnosis and treatment," and concluded that the child was not shown to have that motivation.

[¶ 20] The court was justified in this assessment of the reliability of the child's out-of-court statement. The child was two years and eight months old, and Ricci testified that forensic interviews ordinarily are not conducted with children under the age of thirty-six months because children that young lack language development and the ability to perceive and report events. On this record, the court was not compelled to find that the allegation of abuse had been proved by a preponderance of the evidence. Because the evidence supports the court's judgment, we affirm.

[¶ 21] We decline Malenko's request to impose sanctions pursuant to M.R.App. P. 13(f).

The entry is:

Judgment affirmed.

---

4. Because this was not a criminal prosecution, we need not address potential Confrontation Clause concerns that could arise from the admission of this type of testimony.