MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2018 ME 86
Docket:        Lin-17-439
Submitted
  On Briefs:   April 25, 2018
Decided:       July 3, 2018

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

JANICE MCNUTT

v.

JOHN D. MCNUTT

MEAD, J.

[¶1]     John D. McNutt (Dan) appeals from the judgment of the District Court (Wiscasset, *Raimondi, J.*) finding him in contempt of the parties' earlier divorce judgment and increasing his spousal support obligation to Janice McNutt.   19-A M.R.S. § 951-A(4)-(5) (2017); M.R. Civ. P. 66(d).   Dan contends that the court clearly erred by finding that he is now able to pay increased spousal support and abused its discretion by ordering a temporary increase of that support to $1,750 each month.   He further asserts that it was error for the court not to address an ambiguity in the divorce judgment concerning whether he has a personal obligation to pay Janice the difference between the net proceeds from the sale of the marital properties and the $180,000 value of Janice's interests in the marital real estate as established in

the divorce judgment. He contends that because the court failed to resolve that ambiguity and imposed a lien in Janice's favor that was not provided for in the original decree, the order has prevented him from refinancing one of the properties and rendered him unable to purge his contempt.

[¶2] We conclude that ample competent evidence in the record supports the court's findings that Dan was in contempt of the property disposition provisions of the divorce judgment and that he has enjoyed a substantial increase in income due to his disregard of the court's order to sell or refinance the two marital rental properties. The lien, as applied to the proceeds of the sale or refinancing of the individual properties, is consistent with the terms of the divorce judgment. We affirm the judgment.

## I. BACKGROUND

[¶3] On March 31, 2014, the court (*Billings, J.*) issued a divorce judgment that incorporated the parties' settlement agreement to the extent not inconsistent with the judgment and awarded Janice $1,000 in general spousal support payable each month until she received two lump sum payments for her interests in the marital rental properties. The divorce judgment specifically

provided for spousal support until the rental properties were refinanced or sold:

> **4. Spousal Support**. As and for general spousal support, [Dan] shall pay to [Janice] the sum of $1,000.00 per month, commencing with the month of April, 2014. The spousal support provision shall remain in place until [Dan] has paid all of his obligations to [Janice] under the terms of this Judgment, including $150,000 for the Oak/Howard Street property, $30,000 for the McClintock Street and Townsend Avenue properties, the debts and attorney's fees as set forth below, and the spousal support itself. Spousal support shall terminate once [Dan] has paid [Janice] in full. [Janice] shall have a lien against all three parcels of marital real estate to secure the spousal support obligation of $1,000 per month, and she shall be paid what she is owed at the time of the closing on any given property.

[¶4]  During their marriage, the parties owned two rental properties (the McClintock and the Oak properties) in Boothbay Harbor.[1]  The divorce judgment set apart both of those properties to Dan and ordered that Janice was to receive two lump sums, as noted above, upon the sale or refinancing of the properties.  Throughout these proceedings, Dan has resided in an owner's unit in one of the rental properties.

[¶5]  Pursuant to Section 3 of the divorce judgment, which relates to real estate, Dan was to pay Janice the first $30,000 of the net proceeds from the

---

[1]  As recited by the court in its order, and noted in the divorce judgment's reference to "three parcels of marital real estate," the McClintock property consists of two residential structures.  For the purposes of clarity, we will refer to both of them together as the McClintock property.

4

refinancing of the McClintock property by December 31, 2015; if after that date Dan had not refinanced or paid Janice, he was to sell the property to the first person to make a "commercially reasonable offer" and pay Janice the $30,000 out of the proceeds from that sale. As for the Oak property, the court ordered it placed on the market "within five days from the date of th[e] judgment and sold for the first commercially reasonable offer," at which time the first $150,000 of the net proceeds was to go to Janice. Each of the two provisions in the divorce judgment relating to the sale of the real estate concluded with virtually identical language:

> [Janice will or shall] be paid the first [$30,000 or $150,000] from the net proceeds of sale . . . plus any amounts due her [pursuant to or under] her liens against the property for the debts, attorney's fees and spousal support obligations as set forth below.[2]

[¶6] Nearly two and a half years after the court issued the divorce judgment, Dan still had not sold the Oak property; had failed to refinance the McClintock property by December 31, 2015; and had subsequently failed to list the latter property for sale. On September 27, 2016, Janice filed three motions, asking the court to (1) increase her monthly spousal support to $3,000; (2) enforce the divorce judgment, *see* M.R. Civ. P. 120; and (3) find Dan in

---

[2] The "obligations as set forth below" consisted of Dan's obligation to pay $1,000 per month as general spousal support, his obligation to pay certain specified marital debts, and the requirement that he pay Janice's attorney fees.

contempt for failing to refinance or sell the McClintock property, allowing the Oak property's listing to lapse, and refusing to proceed in good faith with the sale of the properties. *See* M.R. Civ. P. 66(d).[3]

[¶7]  After a hearing on the motions, the court (*Raimondi, J.*) found by clear and convincing evidence that Dan was in contempt of the divorce judgment because, despite his ability to comply, he allowed the Oak property listing to lapse; refused to pay Janice $30,000 although his attorney held that exact sum for him in escrow; and had not refinanced or listed the McClintock property for sale.  The court's order, dated July 31, 2017, imposed a suspended term of incarceration, remedial sanctions requiring Dan to comply with the unfulfilled divorce decree mandates, and an award of attorney fees to Janice.

[¶8]  On Janice's motion to modify her spousal support, the court found that her financial circumstances were substantially worse than at the time of the divorce, in large part because she had received none of the lump sum compensation for her interests in the rental properties.  Dan, on the other hand, had benefitted from rental income generated from the two properties, neither of which he had refinanced or sold in order to pay Janice.  Thus, the court

---

[3] On September 27, 2016, Janice personally, and not through counsel, filed a motion for contempt that was not properly served on Dan.  She then filed a nearly identical motion for contempt on April 10, 2017.  Dan does not contest that Janice served him with the more recent contempt motion.

6

ordered a temporary increase in general spousal support to $1,750 each month, with all support to cease after Dan fully paid his debts to Janice. The July 31 order reaffirmed the liens on the parties' real estate that were created in the divorce judgment for the monthly spousal support, attorney fees, and certain marital debts, but also created a new lien in Janice's favor, something that the divorce judgment had not imposed, "on [both parcels of] the formerly marital real estate . . . to secure the property settlement obligations," i.e., the first specified amounts of the net proceeds from each property's refinancing or sale.

[¶9]  On August 7, 2017, a little over a week after the final order on Janice's motions, the Oak property was sold, netting $116,867 in proceeds that were paid to Janice. That same day, Dan released the $30,000 held in escrow to Janice and moved for the court to make further findings relating to its July 31 Order. *See* M.R. Civ. P. 52(b). Two days later, he moved for the court to grant him a new trial or amend the judgment to clarify his personal liability for the deficiency in the Oak property's sale proceeds. The court denied the motions, deeming that the issue of Dan's personal liability for any shortfall in the total proceeds from the rental properties was not properly before the court. Dan timely appealed. *See* M.R. App. P. 2B(c).

## II. DISCUSSION

[¶10]  Dan does not take issue with the court's judgment finding him in contempt of the property disposition provisions of the divorce judgment or the court's finding that Janice had an increased need for spousal support since the divorce.  He asserts, rather, that the court abused its discretion by ordering an increase in spousal support as a remedial contempt sanction and he contests the finding that he now has a substantially greater ability to pay more in spousal support.  He further contends that it was error for the court to decline to address the divorce judgment's apparent ambiguity regarding his personal liability to Janice for any shortfall in the net proceeds from the Oak property's sale, and that it was error for the court to modify the property division terms of the divorce judgment by imposing an additional lien against both marital properties to secure the individual lump sum payments.

A.     Increased Spousal Support and the Remedial Sanctions

[¶11]  We quickly dispense with Dan's first argument, that the court's increase in spousal support was somehow an impermissible form of remedial contempt sanction, because it is apparent from the judgment that the increase in spousal support was not imposed as a sanction.  Maine Rule of Civil Procedure 66(d)(3) governs the remedial contempt sanctions imposed in this

8

case. We have interpreted that Rule as requiring an alleged contemnor to "comply to the fullest extent possible" with a court judgment or order to avoid being found in contempt. *Efstathiou v. Efstathiou*, 2009 ME 107, ¶ 13, 982 A.2d 339 (quotation marks omitted). Further, as Rule 66(a)(2)(C) provides, the function of remedial sanctions is "to coerce the termination of an ongoing contempt or to compensate a party aggrieved by contempt." We review the factual findings underlying the contempt order for clear error and the remedial sanctions imposed for an abuse of discretion. *See Sullivan v. Tardiff*, 2015 ME 121, ¶¶ 17, 20, 124 A.3d 652.

[¶12]   Here, the court properly found that the divorce judgment unambiguously required Dan (1) to list the Oak property and maintain the listing until it sold for the first commercially reasonable offer; and (2) to refinance the McClintock property by December 31, 2015, or immediately thereafter list and sell it for the first commercially reasonable offer. As of the June and July 2017 motion hearings, it was undisputed that Dan had allowed the Oak property listing to lapse for several months in 2016 and had not refinanced or listed the McClintock property; furthermore, the court found Dan's excuses for his noncompliance unpersuasive. Accordingly, the court's finding, based upon clear and convincing evidence, that Dan violated the

provisions of the divorce judgment despite having the ability to comply, is well supported by the evidentiary record. *See Efstathiou*, 2009 ME 107, ¶¶ 11, 13-14, 982 A.2d 339.

[¶13]  The court imposed remedial sanctions giving Dan the choice to either (1) serve a sentence of fifteen days' incarceration; or (2) release the $30,000 held by his attorney in escrow; take immediate steps to apply for refinancing of the McClintock property with at least three lending institutions; actually refinance them by March 1, 2018, or list them for sale immediately after that date; and pay Janice the attorney fees incurred in prosecuting her contempt motion. *See* M.R. Civ. P. 66(d)(3).  The court's order, however, contains no indication that it intended the increased spousal support obligation to serve as a contempt sanction.  To the contrary, the order independently analyzed and reached completely separate conclusions regarding the contempt and spousal support issues.  All of the sanctions imposed serve to ensure that Janice receives the lump sum settlement payments that Dan had contemptuously withheld.  The court's imposition of sanctions did not constitute an abuse of discretion. *See Murphy v. Bartlett*, 2014 ME 13, ¶ 18, 86 A.3d 610; *Efstathiou*, 2009 ME 107, ¶¶ 14-15, 982 A.2d 339.

B.     Increase in Spousal Support

[¶14]  Dan next challenges the sufficiency of the evidence supporting the court's findings that since the 2014 divorce judgment he now earns more and can afford to pay Janice $1,750 each month in support.  We review for clear error a court's findings regarding a payor spouse's income, *see Efstathiou v. Aspinquid, Inc.*, 2008 ME 145, ¶ 48, 956 A.2d 110, and for an abuse of discretion a court's modification of spousal support, *see McLeod v. Macul*, 2016 ME 76, ¶ 6, 139 A.3d 920.  Title 19-A M.R.S. § 951-A(4) grants the court authority to modify spousal support upon finding "a substantial change in circumstances affecting the payor's ability to pay spousal support and the payee's need for spousal support."  *McAllister v. McAllister*, 2011 ME 69, ¶ 12, 21 A.3d 1010 (quotation marks omitted).

[¶15]  The court found that as of the 2014 divorce judgment, Janice "had virtually no debt" but had nearly depleted all of the funds left in her checking account.  By the time of the motion hearing, however, Janice had accumulated approximately $16,000 in debt, part of which was unpaid taxes on her spousal support, and she had an annual income of $15,600.  She qualifies for Medicaid and food stamps.  Regarding Dan's income and earning potential, the court found that in 2016 the rental properties generated nearly $55,000 more in

gross rent than in 2014, and Dan received all of that rent because he had neither refinanced nor sold those properties.[4] The court did not find credible Dan's assertion that he finds himself with "virtually no income" after taxes. The court was not required to accept Dan's asserted lack of income, *see Handrahan v. Malenko*, 2011 ME 15, ¶ 14, 12 A.3d 79; instead it could rely on the competent evidence in the record supporting a finding that Dan now has a substantially increased ability to pay spousal support. Thus, the court acted well within its discretion when it ordered a temporary increase in spousal support. *See* 19-A M.R.S. § 951-A(4)-(5); *McCarthy v. Goroshin*, 2016 ME 98, ¶ 15, 143 A.3d 138.

C.     Ambiguity in the Divorce Judgment and the Added Lien

[¶16]  Dan finally contends that it was error for the court to decline to address the divorce judgment's apparent ambiguity regarding any personal liability on his part to pay Janice for the shortfall in the net proceeds from the Oak property's sale. He further contends that the court erred by impermissibly

---

[4] More specifically, the court found that Dan had paid down nearly all of the $25,000 of marital debt assigned to him by the divorce judgment, save for $4,000-$5,000 of his son's student loans; invested $500,000 in "cash outlay and sweat equity" into the rental properties; paid $8,000 of his post-judgment attorney fees; made all of his spousal support payments; and still had adequate income to avoid having to apply for food stamps.

12

modifying the divorce judgment when it imposed an additional lien against the marital properties to secure the lump sum payments.

[¶17] The original divorce judgment did not establish a lien with respect to the allocation of the proceeds from selling or refinancing the rental properties. It required Dan to pay Janice's share first out of the net proceeds from the sale or refinancing of the particular properties. Each allocation of a portion of proceeds is specifically designated to be taken from the proceeds of one or the other of those specific property transactions, not both. The express language of the divorce judgment with regard to those provisions does not establish liens upon those properties. *See Lien*, Black's Law Dictionary (9th ed. 2009). The divorce court's simple allocation of the sale proceeds created no legal encumbrance upon the properties themselves—it did so only with the other three obligations (the spousal support, attorney fees, and marital debt). The sole enforcement mechanism for Janice's right to the first share of proceeds was the motivation provided by the fact that the monthly spousal support obligation would continue until all sums due were satisfied.

[¶18] The July 31 order confirmed the liens established in the divorce judgment and created new liens on the existing property settlement obligations:

> [Janice] shall have a lien on the formerly marital real estate as identified in the Divorce Judgment to secure the spousal support obligation, the *property settlement obligations*, and liability for past and present attorney's fees or any other obligations owed by [Dan] to [Janice].

(Emphasis supplied.)

[¶19]   The lien placed by the court in its order on Janice's motions is explicitly directed to "the property settlement obligations," and thus invokes the provisions of the divorce judgment that created two separate obligations: Dan was to pay specific amounts to Janice from the net proceeds of each particular property's sale or refinancing.  The terms of the divorce judgment do not explicitly require Dan to take proceeds from the sale of one property to make up a shortfall on the net proceeds of the other's sale or refinancing.[5]  Accordingly, the imposition of a lien upon a particular property to secure Janice's entitlement to the first proceeds of the sale or refinancing is fully consistent with the terms of the divorce judgment, imposes no additional legal

---

[5]  Dan asked the court to resolve what he characterizes as an ambiguity in the divorce judgment: whether he is personally obligated to make up the difference between the amount designated to Janice upon the sale of either of the properties and the actual net proceeds.  The answer to that question may turn on the question of whether the amounts of proceeds, $150,000 and $30,000 respectively, are deemed a form of spousal support or property division. *See McAllister v. McAllister*, 2011 ME 69, ¶¶ 8-10, 13, 21 A.3d 1010.  The court declined to address that issue because no sale had taken place by the date of the hearing or decision; that question may properly be addressed in future proceedings.  The court may, at a future proceeding, also address the issue of Dan's claimed inability to purge his contempt, which purportedly resulted from actions by Janice subsequent to its contempt order.

obligation, and does not otherwise modify the terms of the property settlement obligations. *Cf. Wardwell v. Wardwell*, 458 A.2d 750, 752-53 (Me. 1983).[6]

The entry is:

> The July 31, 2017, order of the District Court is affirmed.

Clarke C. Hambley, Esq., Miller Law and Mediation, LLC, Portland, for appellant John D. McNutt

Sarah Irving Gilbert, Esq., Camden Law LLP, Camden, for appellee Janice McNutt

Wiscasset District Court docket number FM-2012-82
FOR CLERK REFERENCE ONLY

---

[6] "In the absence of statutory authorization to modify a judgment dividing marital property, the courts are without jurisdiction to do so." *Wardwell v. Wardwell*, 458 A.2d 750, 752 (Me. 1983). Although 19-A M.R.S. § 951-A(4) (2017) authorizes the modification of a judgment's spousal support provisions, there is no similar statutory authority to modify the final property disposition of a divorce decree. *See McAllister*, 2011 ME 69, ¶ 8, 21 A.3d 1010. Motions to modify spousal support "do[ ] not give the court authority to amend or modify the division of marital property in [the divorce] judgment," even upon finding a substantial change in circumstances. *See Bonner v. Emerson*, 2014 ME 135, ¶ 12, 105 A.3d 1023.